IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DARRYL DEWAYNE ROBINSON, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-1237 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM OPINION AND ORDER**

Darryl Dewayne Robinson, a state inmate proceeding *pro se*, seeks habeas relief under 28 U.S.C. § 2254 challenging his state felony conviction. Respondent filed a motion for summary judgment (Docket Entry No. 8), to which petitioner responded (Docket Entry No. 12).

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court will **GRANT** summary judgment and **DISMISS** this case.

**I. PROCEDURAL BACKGROUND**

Petitioner pleaded guilty to aggravated robbery and "true" to an enhancement paragraph in cause number 1015944 in the 179th District Court of Harris County, Texas. The trial court sentenced petitioner to eighteen years incarceration. No direct appeal was taken. The Texas Court of Criminal Appeals denied petitioner's application for state habeas relief without a written order on findings of the trial court without a hearing. *Ex parte Robinson*, No. 67,049-01.

Petitioner raises the following grounds for federal habeas relief:

(1)   an involuntary guilty plea;

(2)   judicial misconduct;

(3)   ineffective assistance of trial counsel; and

(4)   lack of evidence to support the conviction.

Respondent argues that these grounds fail as a matter of law.

## II.   THE APPLICABLE LEGAL STANDARDS

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal relief cannot be granted on legal issues adjudicated on the merits in state court unless the state court adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal

2

principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31.

Petitioner requests this Court to dispense with these standards of review in lieu of those differing standards provided for summary judgment under Rule 56, Federal Rules of Civil Procedure. (Docket Entry No. 12.) While it is true that Rule 56 applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), Rule 56 applies only to the extent that it does not conflict with the habeas rules. *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir.), overruled on other grounds by *Tennard v. Dretke*, 542 U.S. 274 (2004). Therefore, 28 U.S.C. § 2254(e)(1) – which mandates that findings of fact made by a state court are "presumed to be correct" –

3

overrides the ordinary rule in a summary judgment proceeding that all disputed facts must be construed in the light most favorable to the nonmoving party. *Id.* Accordingly, unless petitioner here can rebut the presumed correctness of the state court's factual findings by clear and convincing evidence, this Court must accept those findings as correct.

### III.  INVOLUNTARY GUILTY PLEA

Petitioner contends that because he has "organic brain syndrome" from a 1990 car accident and was taking psychotropic medications at the time of his plea in 2005, he was mentally incompetent and the plea was involuntary.

In support, petitioner submitted to the state habeas court unsworn, uncertified copies of purported civil commitment documents from a July 15, 1992 Harris County commitment proceeding, in which petitioner was temporarily committed to St. Joseph's Hospital In-Patient Mental Health Facility. Petitioner also submitted an unsworn, uncertified copy of a letter dated August 4, 1992, purportedly from a Lawrence G. Root, M.D., and addressed "To Whom It May Concern," which stated that Root had been treating petitioner since July 15, 1992 "for symptoms related to his intermittent explosive disorder with mild organic brain syndrome." The letter further reflected that, "Because of [petitioner's] disorder, he is no longer mentally competent to handle his own personal, legal, health and financial concerns. It is on this basis that I am recommending that a legal guardianship be established for him." *Robinson*, pp. 65-69.

4

In his state habeas application, petitioner submitted his own unsworn statement that head injuries he sustained in a 1990 car accident left him with a seizure disorder and organic brain syndrome. He stated he took psychotropic medications for almost fifteen years afterwards, and that he was so "heavily medicated" he "could not think clearly." *Id.*, p. 89. The particular medications are not identified. Petitioner further submitted affidavits of his mother and father, who stated that in 1992 petitioner was under the care of a psychiatrist and was committed to St. Joseph's Hospital for psychiatric care. *Id.*, p. 92.

In his affidavit submitted to the state trial court on collateral review, petitioner's trial counsel testified as follows:

> [Petitioner] did advise me that he had some mental problems in the past. I ordered the medical records from St. Joseph's Hospital, which reflected that he had been committed back in 1991 and released. I filed a motion to have him examined, which was granted. The psychiatrist, Dr. Osterman, found [petitioner] was receiving medication, was stable, and did not need a formal mental health evaluation.

*Id.*, pp. 33. Trial counsel further testified that:

> 7. I did not observe anything in [petitioner's] speech, behavior or demeanor that gave me any concern about [his] competence to stand trial or plead guilty.
>
> 8. I was aware that [petitioner] took prescribed medication; however, there was nothing that indicated to me that the medication he was taking caused any concern about [his] legal competence to stand trial or plead guilty.
>
> 9. I believe [petitioner] had sufficient present ability to consult with me with a reasonable degree of rational understanding and had a rational

5

>   and factual understanding of the proceedings against him on the date of the plea.
>
> 10. I believe [petitioner's] plea was knowingly and voluntarily entered.

*Id.*, pp. 35-36.

In denying habeas relief, the trial court found that the facts asserted by trial counsel in his affidavit were true and that the affidavit was credible, and made the following relevant findings of fact:

> 1. The applicant fails to overcome the presumption that his guilty plea was knowing and voluntary.
>
> 2. The applicant fails to show that he was incompetent to stand trial at the time he entered his guilty plea in the primary case; the applicant fails to overcome the presumption that he was legally competent to stand trial in the primary case.
>
> 3. The applicant fails to show that his guilty plea was unlawfully induced, made involuntarily, or made without an understanding of the nature of the charges against him and the consequences of his plea.

*Id.*, p. 112 (citations omitted). The Texas Court of Criminal Appeals relied on these findings in denying habeas relief.

Petitioner acknowledges that following a court-ordered examination of petitioner on August 26, 2005 in the state criminal proceeding, Debra Osterman, M.D., determined that petitioner was receiving medication, did not appear to be demonstrating aggressive or unpredictable behavior, did not need additional time for stabilization, and did not need a formal mental health evaluation. (Docket Entry No. 5, p. 9.) Petitioner was not found

6

incompetent to stand trial. Petitioner complains, however, that Dr. Osterman's examination and report were superficial and that she did not investigate his 1992 mental health problems or undertake a "thorough" mental health evaluation. Petitioner's assertion that because he was found incompetent and temporarily committed in 1992 he was "probably" still incompetent in 2005, is conclusory and unsupported. Nor does petitioner show what a more "thorough" mental examination would have shown. Petitioner's claim that he was mentally incompetent at the time of his guilty plea is unsupported by clear and convincing evidence in the record.

Petitioner fails to show that the state court's determinations were contrary to or involved an unreasonable application of federal law, or were unreasonable determinations of the facts based on the evidence in the record. Petitioner fails to controvert the state court's factual findings with clear and convincing evidence. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

## IV. JUDICIAL MISCONDUCT

Petitioner alleges that the trial judge at his plea hearing became irritated when petitioner kept refusing to accept the State's plea bargain offer, and that at one point, the trial judge left the bench and told the defense that, "Ya'll need to do something today." Petitioner states, as do his parents in their affidavits, that as the trial judge walked away, and within hearing range of petitioner and his parents, he stated, "I'm tired of this case, he (petitioner) better take the eighteen or get aggravated life." Petitioner argues that the

7

judge's comment scared him and his parents and induced him to accept the State's eighteen year plea bargain offer.

> The state habeas court ordered trial counsel to state, under oath,
>
>> whether trial counsel was ever aware of threats made to [petitioner] or his family by the judge regarding the range of punishment in the instant case, including specifically whether trial counsel overheard the judge tell [petitioner] and his parents that [petitioner] had better accept the State's offer of eighteen years or he (the judge) would give [petitioner] life (if so, state why counsel did not object or intercede on behalf of [petitioner]).

*Robinson*, p. 23.

> In response, counsel submitted an affidavit, testifying in relevant part as follows:
>
>> I do not remember specifically any threats made to [petitioner] or his family by the trial judge, but the trial judge did tell [petitioner] the range of punishment if he were convicted. He told him what [t]he range of punishment was as a second offender, the minimum being 15 years and the maximum being life, and the range of punishment as a habitual being 25 years and the maximum being life. *I can positively say the judge never told him he would get life imprisonment if he failed to plead guilty.*

*Id.*, p. 35 (emphasis added).

> In denying habeas relief, the state court expressly found that the facts asserted in trial counsel's affidavit were true, that counsel's affidavit was credible, and that:
>
> 1. [Petitioner] fails to overcome the presumption that his guilty plea was knowing and voluntary.
>
> \* \* \* \*
>
> 3. [Petitioner] fails to show that his guilty plea was unlawfully induced, made involuntarily, or made without an understanding of the nature of the charge against him and the consequences of his plea.

8

*Id.*, p. 112 (citations omitted). The Texas Court of Criminal Appeals expressly relied on these findings in denying habeas relief.

Petitioner argues that the statements made in his affidavit and in those of his parents must be accepted as true under Rule 56, Federal Rules of Civil Procedure. Under Rule 56, disputed material factual allegations are construed in the light most favorable to the nonmoving party. *See, e.g., Scott v. Harris*, __ U.S. __, 127 S. Ct. 1769, 1776 (2007). This standard, however, does not apply in a section 2254 habeas summary judgment proceeding. *See, e.g., Woods v. Cockrell*, 307 F.3d 353, 356-57 (5th Cir. 2002) (applying section 2254 standards to habeas summary judgment review). To the contrary, the provisions of 28 U.S.C. § 2254(e)(1) require the district court to presume as true all facts found by the state court absent clear and convincing evidence. The state court expressly found counsel's factual allegations true and his affidavit credible, thus impliedly finding those of petitioner and his parents not true or credible. A credibility determination by the state habeas court is afforded deference under section 2254(e). *Guidry v. Dretke*, 397 F.3d 306, 326 (5th Cir. 2005).

Petitioner fails to show that the state court's determinations were contrary to or involved an unreasonable application of federal law, or were unreasonable determinations of the facts based on the evidence in the record. Petitioner fails to controvert the state court's findings with clear and convincing evidence. No basis for habeas relief is shown, and respondent is entitled to summary judgment on the issue of judicial misconduct.

## V. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the

10

judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

In context of a guilty plea, a petitioner must prove not only that his attorney actually erred, but also that he would not have pleaded guilty but for the error. *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). Under the first prong of this test, if a petitioner was represented by counsel during the plea process and entered his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). To meet the second prong, a petitioner must establish that but for his counsel's allegedly erroneous advice, he would not have pleaded guilty but would have insisted on going to trial. *Id.* at 59; *Armstead*, 37 F.3d at 206. Once a valid guilty plea has been entered, all non-jurisdictional defects in the proceedings are waived. This waiver includes all claims of ineffective assistance of counsel except insofar as the alleged

11

ineffectiveness relates to the giving of the guilty plea. *Reeves v. Pettcox,* 19 F.3d 1060, 1062 (5th Cir. 1994).

Petitioner raises the following instances of ineffective assistance of counsel:

(1) counsel failed to object to Dr. Osterman's inadequate mental health examination, failed to obtain an independent psychiatric evaluation, and failed to request the court to take judicial notice of petitioner's 1992 commitment proceeding;

(2) counsel failed to request a jury determination of petitioner's competency;

(3) counsel failed to move for dismissal after complainant failed to identify him in an out-of-court line-up;

(4) counsel failed to insist that the prosecuting attorney investigate Damon Milton as a potential suspect;[1]

(5) counsel failed to fully investigate the case and interview "Mr. Nino" as an alibi witness;[2]

(6) counsel failed to object to the trial court's improper pretrial comments; and

(7) counsel coerced petitioner's guilty plea by threatening him with a life sentence or threatening to withdraw because petitioner failed to pay his attorney's fees.

In compliance with the state habeas court's order, trial counsel filed an affidavit testifying to the following relevant facts:

---

[1] The Court notes that in his judicial confession, petitioner explicitly admitted that he *and* Damon Milton committed the charged offense. *Robinson,* p. 118.

[2] Not only does the record show that counsel investigated Nino as a potential witness, but it shows that Nino's testimony would not have aided the defense.

I was retained to represent [petitioner] on February 11, 2005. [Petitioner] had two prior felony convictions; however, he was only indicted as a second offender. The range of punishment for aggravated robbery as a second offender was 15 years to life. The District Attorney's Office had threatened to refile the case as a habitual offender if a plea agreement couldn't be worked out. If [petitioner] were convicted as a habitual offender, the range of punishment was a minimum of 25 years to a maximum [of] life.

Factually, [petitioner's] fingerprints had been lifted from the inside surface, top edge of the driver's door window of the motor vehicle driven by [complainant], who was employed by Hill Country Dairy. I hired [a private investigator] for the purpose of interviewing [complainant] to find out how she contended the fingerprints could have gotten on the top edge of the driver's door window of her motor vehicle. She advised the private investigator that she was preparing to make a deposit at the Frost Bank for her employer and began rolling down the window. As an unknown person was approaching her from behind, she tried to roll up the window. Before she was able to get the window rolled up all the way, the unknown person grabbed the window with one hand and stuck a pistol in her face with the other hand. The unknown person demanded she roll back down the window and was demanding the deposit. [Petitioner's] hand and fingerprints were located on the inside surface, top edge of the driver's door window of the vehicle driven by [complainant]. I wanted to find out whether or not [complainant] ever left her vehicle in the parking lot at work with the window rolled down. [She] told the private investigator she never leaves her vehicle in the parking lot at work with the window rolled down. [Complainant] further told the private investigator that [petitioner] never submitted an application to work at the dairy. The question had arisen as to whether or not [petitioner] had gone to the dairy to make an application for work and had placed his hands on the inside of the window of [complainant's] car when he went there to apply for a job at the Hill Country Dairy.

The private investigator also asked about Damon Milton, who was a current employee at Hill Country Dairy. Mr. Ishamiel Nino, the supervisor at Hill Country Dairy, told my private investigator he observed Mr. Milton making a phone call at the time [complainant] was leaving for the bank. Mr. Nino further stated he observed Mr. Milton acting very peculiarly from the time word spread about the robbery of [complainant]. Mr. Nino told police of his suspicion and thought there was a connection between Mr. Milton and

13

[petitioner]. The police had gone to Milton's home and spotted a tan Cadillac across the street from Mr. Milton's address, which was registered to [petitioner's] mother. A tan, late model Cadillac had been identified by witnesses as being used by the robber when he fled the scene at the bank. [Petitioner] lived across the street from Damon Milton. The private investigator further advised me that Mr. Nino asked Mr. Milton about the robbery some days later because he suspected Milton's involvement. Milton supposedly said 'I did it.' Mr. Nino felt that Mr. Milton was admitting to playing a part in the robbery by calling someone and letting him know when to expect [complainant] at the bank. Mr. Nino would further testify that at the time of the robbery, Mr. Milton was at work at Hill Country Dairy. The investigator's report did not reveal Mr. Milton as the more probable assailant.

\* \* \* \*

It is true, the complaining witness did not identify [petitioner] in a line-up. However, [petitioner's] allegation that I told him that if he could not be identified in a line-up the case would be dismissed, is not true. I told him his fingerprint identification, the description of the car at the scene, and his prior felony convictions created a difficult situation for him.

\* \* \* \*

I also filed a motion to disqualify the fingerprint expert from HPD because if I would prevail in disqualifying the fingerprint expert, the State would have no case. . . . At the request of [petitioner], I hired a fingerprint expert. . . . I received a report back from my expert, Mr. Roy McDonald, that the fingerprints lifted from the complaining witness's motor vehicle matched the known fingerprints of [petitioner]. In addition, Mr. McDonald advised me that he knew the fingerprint expert at the Houston Police Department, and that she was well qualified.

\* \* \* \*

It is also true, I offered to withdraw as counsel if he wanted me to, because I felt he would be convicted by a jury and he would receive more than 25 years if he were re-indicted as a habitual and the case were tried to a jury. However, it is not true I offered to withdraw for not receiving my fee. His mother timely paid my fee in full as well as the [] investigation fees.

14

I will go down each item specifically requested and will cover them one by one.

1. I cannot state the exact amount of time I discussed plea papers with [petitioner]. However, I explained to him the rights he would be waiving and further advised him even though the Court did not have to follow the State's recommendation, the Court would in all probability follow the State's recommendation, and he would receive 18 years in the penitentiary[.]

2. My records reflect that I visited with [petitioner] approximately 21 times, both in the Harris County Jail and in the courtroom, as well as having conferences with his mother. I would estimate I discussed the range of punishment with [petitioner] at least 15 times, explaining to him that the minimum punishment he could receive as a second offender was 15 years TDC; and when the District Attorney's office threatened to file on him as a habitual offender, I advised him if they did file as a habitual, the minimum punishment would be 25 years and the maximum being life. Further, I advised [him] that if he pled guilty, there would be a finding of a gun involved and further advised him he would not be eligible for parole until he had served at least half of the 18 years. . . . When I visited with [petitioner] between September 13 and December 19, [petitioner] was discussing with me Tesia Dobard, the case worker he thought would be helpful in raising an insanity defense. I talked to Tesia Dobard, and she advised me she was not a doctor and does not deal with the question of whether someone is sane or insane. Her only job was to see that proper medication was received by prisoners while they were in jail. She had mentioned to [petitioner] having him re-evaluated. I think he mistakenly thought the re-evaluation she was talking about could be helpful to an insanity defense. The evaluation she was talking about was making sure he received the correct medication.

3. I did advise [petitioner] that he *could*[] receive life in prison if the case were tried, but I never told him he *would* receive life. I advised him that if this case were tried as a habitual, I thought that he would probably receive somewhere between 35 and 45 years in the penitentiary, in a letter I gave him on September 19, 2005. In my September 13, 2005[] letter[] I gave him, I believe I estimated the

15

> punishment would be between 40 and 50 years assuming they tried him as a habitual. In a letter that summarize[d] the facts[] I gave him, dated July 26, 2005, I estimated the punishment would be between 40 and 50 years.
>
> \* \* \* \*
>
> 5. I did encourage [petitioner] to plead guilty because I strongly believed he would be convicted. If he was convicted, there was no way that he could receive less than 25 years, assuming they re-indicted him as a habitual. As I previously stated, with an armed robbery being involved, I believed the punishment would exceed the minimum.
>
> 6. In some of our conversations, [petitioner] claimed he was innocent, but insisted he did not want to proceed to trial. I can only assume [petitioner] understood that I felt I could not create a 'reasonable doubt' that the fingerprints on the complaining witness's motor vehicle were not his; and if they were his, they somehow got on the motor vehicle at a time other than the robbery. He understood that the minimum he could receive was 15 years, unless he was re-indicted as a habitual, and then the minimum was 25 years. We discussed the range of punishment numerous times.

*Robinson*, pp. 30-35 (original and added emphasis).

As part of his guilty plea, petitioner admitted in open court that, "I am satisfied that the attorney representing me today in court has properly represented me and I have fully discussed this case with him." *Robinson*, p. 118. Petitioner further admitted that, "I am totally satisfied with the representation provided by my counsel and I received effective and competent representation." *Id.*, p. 124. These solemn declarations in open court carry a strong presumption of truth, forming a formidable barrier in the instant collateral proceeding. *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998).

16

In denying habeas relief, the state trial court found counsel's factual allegations true and his affidavit credible, and made the following relevant findings:

4. The applicant fails to show that trial counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.

5. The totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of counsel.

*Robinson*, p. 113 (citations omitted). The Texas Court of Criminal Appeals relied on these findings in denying habeas relief.

Petitioner's knowing and voluntary guilty plea waived petitioner's claims of ineffective assistance under sub-grounds (1) through (5), as these claims do not relate to the giving of the guilty plea. Nor does petitioner show that but for counsel's alleged dereliction, he would not have pleaded guilty, but would have insisted on going to trial. *See Joseph v. Butler*, 838 F.2d 786, 791 (5th Cir. 1988).

Petitioner's ineffective assistance sub-grounds (6) and (7), however, were not waived as they do relate to the giving of the guilty plea. Under sub-ground (6), petitioner claims that counsel failed to object to the trial court's judicial misconduct in making improper comments. This Court already denied petitioner's claim for judicial misconduct. Counsel cannot be deficient for failing to raise groundless or meritless objections. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

17

Under sub-ground (7), petitioner claims that counsel coerced his guilty plea by threatening him with a life sentence or threatening to withdraw because petitioner failed to pay his attorney's fees. The state habeas court expressly found true and credible counsel's affidavit testimony that, "I did advise [petitioner] that he *could*[] receive life in prison if the case were tried, but I never told him he *would* receive life." *Robinson*, p. 34 (original and added emphasis). Petitioner fails to rebut the presumed correctness of this factual finding by clear and convincing evidence. The state habeas court further expressly found true and credible counsel's affidavit testimony that, "[I]t is not true I offered to withdraw for not receiving my fee. His mother timely paid my fee in full as well as the [] investigation fees." *Id.*, p. 33. Petitioner also fails to rebut the presumed correctness of this factual finding by clear and convincing evidence.

Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. No grounds for habeas relief are shown, and respondent is entitled to summary judgment on the issue of ineffective assistance of counsel.

## VI. INSUFFICIENCY OF THE EVIDENCE

Petitioner complains of insufficient or no evidence to support his guilt independent of his guilty plea stipulations. In denying state habeas relief, the trial court made the following relevant findings of fact:

6. The applicant's challenges to the sufficiency of the evidence are not cognizable in post-conviction habeas proceedings.

7. The applicant's guilty plea, judicial confession, and stipulation of evidence are sufficient to support his conviction in the primary case.

*Robinson*, p. 113 (citations omitted). The Texas Court of Criminal Appeals expressly relied on these findings in denying habeas relief.

Petitioner's claim of insufficient evidence is not a cognizable federal habeas ground. *See West v. Johnson*, 92 F.3d 1385, 1398, n. 18 (5th Cir. 1996); *Renz v. Scott,* 28 F.3d 431, 432 (5th Cir. 1994). No federal constitutional issue is raised by the failure of Texas state courts to require evidence of guilt corroborating a voluntary plea. *Baker v. Estelle*, 715 F.2d 1031, 1036 (5th Cir. 1983). The mandate of *Jackson v. Virginia*, 443 U.S. 307 (1979), that sufficient evidence exist from which a rational fact finder could find guilt beyond a reasonable doubt, is inapplicable to convictions based on a guilty plea. *Kelley v. Alabama*, 636 F.2d 1082, 1083-84 (5th Cir. 1981). Because petitioner has not shown that his guilty plea was involuntary, his sufficiency challenges to the evidence present nothing for federal habeas review. Respondent is entitled to summary judgment on this issue.

## VII. CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 8) is **GRANTED**. The petition for a writ of habeas corpus is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. A certificate of appealability is **DENIED**. Any and all pending motions are **DENIED AS MOOT**.

The Clerk will provide copies of this order to the parties.

Signed at Houston, Texas, on this the 7th day of February, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE